# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SERGEI KOVALEV,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **NO. 19-5790** |
| | : | |
| **CITY OF PHILADELPHIA,** *et al.* | : | |
| **Defendants.** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                               **February 14, 2020**

Philadelphian Sergei Kovalev returns *pro se* to sue a variety of state actors and their lawyer, arguing City of Philadelphia's commercial refuse fee obligations upon non-party House of Worship (1) constitute a pattern of racketeering activity, (2) are otherwise criminal, and (3) cause him emotional distress. He sues the City of Philadelphia, the Philadelphia Department of Revenue, the Philadelphia Tax Review Board, the Philadelphia Office of Administrative Review, the Philadelphia Sheriff's Office, the Philadelphia Law Department, Francis Breslin, Agostino J. Fanelli, Nancy A. Kammerdeiner, Meghan E. Claiborne, Shannon G. Zabel, and numerous John and Jane Does. We must dismiss. Proceeding *pro se*, Mr. Kovalev cannot seek relief for anyone other than himself. He does not allege a personal loss in paying fees. He also lacks standing to sue under criminal statutes. His claims relating to a December 2015 administrative hearing are also barred by claim preclusion. Absent a federal question or diversity of citizenship, we decline to exercise supplemental jurisdiction. We dismiss his Complaint under 28 U.S.C. § 1915(e)(2)(B)(ii).

## I. *Pro se* allegations

Sergei Kovalev is in the business of providing religious services through his "House of Worship (the Church) in Philadelphia."[1] Mr. Kovalev is the "face, brain, arms, body, and the laborer for the religious establishment." He "has the (human) ability to maintain the existence of the House of Worship and he is responsible for the creation of the financial basis for the survival of the House of Worship."[2]

He challenges the structure for the collection of commercial refuse in the City of Philadelphia.[3] As described by the Philadelphia Streets Department, "the Solid Resources Fee of three hundred dollars ($300.00) will be imposed annually on any commercial establishment or multi-unit property receiving city collection of rubbish and recycling materials. The City of Philadelphia currently collects solid waste from eligible small commercial establishments and multi-unit properties. . . ."[4] The City has an exemption form, which "lists Houses of Worship as [] exempt entities."[5] But "the Philadelphia Department of Revenue and Defendant Francis Breslin created a special catch" requiring all Houses of Worship to provide an "IRS 501(c)(3) tax exemption letter."[6] This obligation is placed upon the House of Worship, not Mr. Kovalev.

"The Department of Revenue and Defendant Francis Breslin are . . . effectively nullifying such 'exemption' by demanding [an] IRS § 501(c)(3) exemption letter as a condition for the "exemption"" and improperly "designating already tax exempted Houses of Worship as corporations."[7] "Houses of Worship in Philadelphia are harassed and defrauded by defendants Department of Revenue and its Commissioner Francis Breslin." Mr. Kovalev concludes they "are not obligated to provide any IRS § 501(c)(3) letters."[8] "Such unofficial 'laws' are forcing churches, mosques, and synagogues to convert themselves from the religious worshiping facilities into "corporations, community chests, funds, and foundations" only to satisfy unlawful demands

2

of the Philadelphia Department of Revenue and Defendant Francis Breslin."[9] "Philadelphia Department of Revenue and Defendant Francis Breslin are intentionally creating irreparable harm to the religious establishments in Philadelphia."[10]

After receiving bills for commercial refuse fees in 2014, Mr. Kovalev learned the Department of Revenue had been compiling fees against House of Worship including "penalties and interest, at the time when the property in question was strictly used as a House of Worship, had no any [sic] 'commercial refuse[,'] and was already excluded by the City's own regulations from the collection of 'commercial refuse fees.'"[11] He responded by becoming "involved in the official administrative appeal process, where the Department of Revenue of the City of Philadelphia illegally and in direct contradiction to the City's own laws, was assessing under false pretenses and in 'extortion-like' manner the 'commercial refuse collection fees' against the exempted property used as a House of Worship."[12]

Mr. Kovalev pursued administrative appeals challenging the collection of commercial refuse fees assessed against the House of Worship.[13] Mr. Kovalev alleges during the administrative appeals process, the Office of Administrative Review and the Tax Review Board created "additional revenues in the form of added interest and penalties during artificially and intentionally delayed fake appeals," resulting in the "denial of honest services to citizens of Philadelphia."[14]

Mr. Kovalev also summarizes the events both during and after the Tax Review Board hearing on December 10, 2015, for which he asserted a separate civil rights cause of action.[15] Having presided over this same case, we are aware of his allegations which involved his constitutional rights. Following trial, the jury returned a unanimous verdict in favor of City employees Paula Weiss and Yolanda Kennedy (now sued again today) and against Mr. Kovalev

on all of his claims.[16] Mr. Kovalev alleges, however, "[a]s a result of the Enterprise's fraudulent activities, [he] lost his case and suffered injury to his business and property."[17] Mr. Kovalev blames Defendants for the jury verdict against him.

## II. Analysis

Mr. Kovalev now alleges Defendants agreed to, conducted and participated in the conduct of the Philadelphia Honest Services Fraud Enterprise's ("Enterprise") affairs through a pattern of racketeering activities and for the unlawful purpose of intentionally defrauding and injuring him and other citizens similarly situated.[18] He alleges Defendants devised numerous schemes to unlawfully demand payments from Mr. Kovalev and from all other similarly situated citizens and used the Philadelphia Sheriff's Office to silence and intimidate their opponents.[19] Mr. Kovalev further asserts the Enterprise subjected him to psychological torture and abuse.[20]

Sergei Kovalev alleges state actors violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") and 18 U.S.C. § 1346 by "running a corrupted enterprise [which he names the Philadelphia Honest Services Fraud Enterprise] for the purpose of intimidation, extortion of financial funds, and retaliation against citizens who would dare to object to illegal activities in the City's departments."[21] Mr. Kovalev also alleges a state law claim of negligent infliction of emotional distress.

On January 29, 2020, we granted Mr. Kovalev leave to proceed *in forma pauperis* because it appeared upon review of his sworn statement he was incapable of paying the fees necessary to commence this action.[22] Under 28 U.S.C. § 1915(e)(2)(B)(ii), we dismiss his Complaint if it fails to state a claim. We must determine whether Mr. Kovalev pleads "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[23] Conclusory statements

4

and naked assertions will not suffice.[24] As Mr. Kovalev sues *pro se*, we liberally construe his allegations.[25]

### A. Mr. Kovalev may not represent third parties assessed the fee.

Mr. Kovalev appears to be asserting claims on behalf of House of Worship[26] and/or "other citizens similarly situated" relating to commercial refuse fees.[27] Mr. Kovalev lacks standing to pursue claims on behalf of others even if he is the person running the House of Worship. He is not a house of worship. "Although an individual may represent herself or himself *pro se*, a non-attorney may not represent other parties in federal court."[28]

Mr. Kovalev may not proceed *pro se* if he is bringing his Complaint on behalf of a trust or other organization.[29] "To assert these claims on behalf of [an organization], [Mr. Kovalev] would need to retain counsel."[30] "Only a natural person may qualify for treatment *in forma pauperis* under [section] 1915," so if a trust is the real party in interest, it may not proceed *in forma pauperis*.[31] We dismiss claims raised on behalf of the House of Worship or any individuals other than Mr. Kovalev.

### B. We dismiss the RICO claim.

Assuming Mr. Kovalev attempts to plead claims on his own behalf even though he did not lose any property, he lacks standing to do so. The RICO Act "makes it unlawful 'for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'"[32] Section 1962(d) expands liability under the statute by making it "unlawful for any person to conspire to violate [section 1962(c)]."[33]

RICO provides "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter [which prohibits racketeering activity], may sue therefor in any appropriate United States district court . . . ."[34] "In order to have standing to litigate a civil RICO claim, a plaintiff must show [he] suffered an injury to [his] business or property and that the injury was proximately caused by the defendant's racketeering activities."[35] "[I]n construing the federal RICO law, [our Court of Appeals] has rejected the argument that personal injuries qualify as RICO injuries to 'business or property.'"[36] RICO does not provide a cause of action where alleged damages are "speculative."[37]

Nothing in his Complaint provides a plausible basis to conclude Mr. Kovalev suffered a non-speculative injury to business or property giving him standing to raise a RICO claim. Mr. Kovalev alleges injury in "his business, property and livelihood."[38] This allegation is conclusory and we do not give it credit absent factual support. Mr. Kovalev admits the fees are imposed upon House of Worship.

Mr. Kovalev's alleged damages arise entirely out of his disputes concerning the collection of Philadelphia commercial refuse fees and, in particular, the assessment of fees to the House of Worship.[39] His Complaint is devoid of allegations Mr. Kovalev made payments out of his own pocket. An individual does not plead fraud or a suffered injury when they allege their refusal to pay unwarranted charges out of their own pocket.[40]

Mr. Kovalev also appears, at least in part, to seek compensation for personal injuries, but not injuries to "business or property" required by RICO.[41] Physical or emotional harm to a person is insufficient to show a person is injured in his business or property under RICO.[42] "Similarly, losses which flow from personal injuries are not [damage to] property under RICO."[43] Mr.

6

Kovalev lacks standing to bring a civil RICO claim to the extent those allegations can be understood to raise claims on another's behalf.

Mr. Kovalev's failure to allege injury to his business or property is also fatal to his RICO conspiracy claims under section 1962(d).[44] We dismiss Mr. Kovalev's RICO claims with prejudice.

### C. Mr. Kovalev's claims relating to the December 2015 hearing are barred by claim preclusion.

To the extent Mr. Kovalev is raising claims based on events occurring both during and immediately following the Tax Review Board hearing on December 10, 2015, and to the extent he pursued those claims in *Kovalev v. Weiss*, No. 16-6380, those claims are barred by claim preclusion.

*Res judicata*, or claim preclusion, bars a claim brought or could have been brought in a previous action.[45] Three elements are required for *res judicata* to apply: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action."[46] "In determining whether *res judicata* applies, courts do not proceed mechanically, but focus on the central purpose of the doctrine, to require a plaintiff to present all claims arising out of the same occurrence in a single suit."[47] "*Res judicata* does not require the precluded claim to actually have been litigated; its concern, rather, is that the party against whom the doctrine is asserted had a full and fair opportunity to litigate the claim."[48]

Mr. Kovalev already raised claims before this Court based on events surrounding the December 10, 2015 hearing. He previously had a full and fair opportunity to litigate his claims. He may not reassert those claims in a new lawsuit merely because his prior efforts failed.

7

### D. We dismiss Mr. Kovalev's criminal claims under 18 U.S.C. § 1346.

Mr. Kovalev claims Defendants violated 18 U.S.C. § 1346 by denying him "honest services" and by inventing "a scheme to defraud, to deceive, and to harm [him] in his business and property."[49] The statute to which Mr. Kovalev refers falls under the federal mail fraud chapter of Title 18 of the United States Code. Criminal statutes, however, do not provide a basis for civil liability.[50] We dismiss Mr. Kovalev's section 1346 claims with prejudice.

### E. We decline to exercise supplemental jurisdiction with Mr. Kovalev's state law emotional distress claim.

Mr. Kovalev sues Pennsylvania citizens for negligent infliction of emotional distress under Pennsylvania law.[51] Because we dismissed Mr. Kovalev's federal claims, we decline to exercise supplemental jurisdiction over this state law claim. The only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants us jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, "no plaintiff [may] be a citizen of the same state as any defendant.'"[52] An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain.[53]

Mr. Kovalev fails to plead the amount in controversy. It also appears we lack complete diversity of citizenship. Mr. Kovalev alleges he is a "citizen of the United States and resident of the City of Philadelphia in the State of Pennsylvania."[54] Mr. Kovalev further alleges the City of Philadelphia is a municipality located in the State of Pennsylvania, and the remaining Defendants are either "Departments of the City of Philadelphia" or are employed by the City of Philadelphia

8

in various capacities.⁵⁵ Mr. Kovalev fails to meet his burden of demonstrating our subject matter jurisdiction over his state law claim.⁵⁶ We dismiss his state law claim.

## III. Conclusion

We dismiss Mr. Kovalev's federal claims with prejudice for failure to state a claim. We dismiss Mr. Kovalev's state law claims for lack of subject matter jurisdiction. We deny Mr. Kovalev leave to amend as amendment would be futile.

---

¹ ECF Doc. No. 2 at 7.

² *Id.* at 7-8.

³ *Id.* at 7.

⁴ *Id.* at 8.

⁵ *Id.* at 8-9.

⁶ *Id.* at 9.

⁷ *Id.*

⁸ *Id.* at 9-10.

⁹ *Id.* at 10-11.

¹⁰ *Id.* at 11.

¹¹ *Id.* at 13.

¹² *Id.* at 13-14.

¹³ *Id.* at 14-18. Mr. Kovalev avers he attended the first-level informal hearing conducted by the Philadelphia Office of Administrative Review on October 14, 2015 during which he was subjected to "intimidation" from defendants Agostino J. Fanelli (hearing master), Paula Weiss (executive director), and Yolanda Kennedy (clerical supervisor). *Id.* at 14-15. Mr. Kovalev requested second-level review and attended a Tax Review Board hearing on December 10, 2015. *Id.* at 15. According to his Complaint, the Tax Review Board refused to make any decision in his appeal and Defendant Nancy A. Kammerdeiner instructed Mr. Kovalev to deliver an IRS Section 501(c)(3) tax exemption letter if the House of Worship wanted an exemption from the commercial refuse collection fees. *Id.* at 16. Mr. Kovalev again disputed the requirement the houses of worship

9

provide an IRS Section 501(c)(3) tax exemption form, stating the affected house of worship would be required to convert itself into a corporation in order to provide such a form. *Id.* at 16-17. Mr. Kovalev asserted instead of making a timely decision, the Board waited nearly seven months, and denied his appeal in July 2016. *Id.* at 17.

[14] *Id.* at 17-18.

[15] *Id.* at 18-27; *see Kovalev v. Weiss*, No. 16-6380.

[16] *See Kovalev v. Weiss*, No. 16-6380, ECF Doc. No. 192. Some of Mr. Kovalev's allegations are nearly identical to assertions contained in another Complaint he recently filed in this District. (Compare ECF Doc. No. 2 at 24-27 with *Kovalev v. Claiborne*, No. 20-188, ECF Doc. No. 2 at 11-14.). This section primarily concerns the use of an exhibit during the trial before us in January 2018. Mr. Kovalev claims, as he did then and before our Court of Appeals, the City's lawyers fraudulently created this exhibit in anticipation of trial. (ECF Doc. No. 2 at 24-25.) The Complaint in No. 20-188, like the one at issue in this matter, is subject to screening under 28 U.S.C. § 1915(e)(2)(B)(ii).

[17] ECF Doc. No. 2 at 27.

[18] *Id.* at 28.

[19] *Id.* at 30-32, 36, 39.

[20] *Id.* at 33-34.

[21] *Id.* at 2-3.

[22] ECF Doc. No. 6.

[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

[24] *Id.*

[25] *Higgs v. Attorney General*, 655 F.3d 333, 339 (3d Cir. 2011).

[26] Mr. Kovalev's Complaint primarily concerns commercial refuse collection fees imposed against "Kovalev's House of Worship." ECF Doc. No. 2 at 13. Specifically, his Complaint contains the following averments:

> 69. . . . [T]he City of Philadelphia and the Department of Revenue never mailed anything (at least it was not received), neither to Sergei Kovalev, nor to the House of Worship, until approximately the year 2014.
>
> 70. Nevertheless, the Department of Revenue, with extreme prejudice, was vigorously compiling, year after year, in its own

> "books" "commercial refuse fees" against Mr. Kovalev's House of Worship (the Church), penalties and interest, at the time when the property in question was strictly used as a House of Worship, had no any "commercial refuse", and was already excluded by the City's own regulations from the collection of "commercial refuse fees".
>
> 71. Despite the implementation of the "commercial refuse fees" around the year 2011, as it appears to be, the City of Philadelphia and the Department of Revenue stated their "book" assessments against Mr. Kovalev's House of Worship only around the year 2013.
>
> . . .
>
> 74. Plaintiff Sergei Kovalev, on his own behalf and as a representative of the religious entity became involved in the official administrative appeal process . . . .

*Id.* Mr. Kovalev swore in his Motion to proceed *in forma pauperis* the church pays his basic expenses, which reflects the church is a separate entity from Mr. Kovalev. ECF Doc. No. 1. If Mr. Kovalev and the House of Worship are one and the same, he is obligated to declare all of the church's assets and income as his own. He has not done so.

---

[27] ECF Doc. No. 13, 28, 30-31, 38, 49.

[28] *Murray on behalf of Purnell v. City of Philadelphia*, 901 F.3d 169, 170 (3d Cir. 2018); *see also* 28 U.S.C. § 1654; *Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) ("[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim (quotations omitted)); *Osei-Afriyie ex rel. Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882-83 (3d Cir. 1991) (a *pro se* litigant who is not an attorney may not pursue claims on behalf of anyone other than himself).

[29] *See Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–02 (1993) ("It has been the law for the better part of two centuries, . . . that a corporation may appear in the federal courts only through licensed counsel. As the courts have recognized, the rationale for that rule applies equally to all artificial entities.") (citations omitted).

[30] *Marin v. Leslie*, 337 F. App'x 217, 220 (3d Cir. 2009) (per curiam).

[31] *See Rowland*, 506 U.S. at 196; *Upshur v. Hospedale*, No. 17-1358, 2018 WL 395729, at *2 (D. Del. Jan. 12, 2018).

[32] *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (quoting 18 U.S.C. § 1962(c)).

[33] 18 U.S.C. § 1962(d).

[34] 18 U.S.C. § 1964(c).

11

³⁵ *Miller v. Pocono Ranch Lands Prop. Owners Ass'n Inc.*, 557 F. App'x 141, 145 (3d Cir. 2014) (per curiam).

³⁶ *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 323 (3d Cir. 2014) (citing *Maio v. Aetna, Inc.*, 221 F.3d 472, 492 (3d Cir. 2000)).

³⁷ *Maio*, 221 F.3d at 495 (speculative damages that were "predicated exclusively on the *possibility* that future events might occur" could not form the basis of a RICO injury).

³⁸ *See, e.g.*, ECF Doc. No. 2 at 3, 7, 38-39, 41-44, 48-49.

³⁹ ECF No. 2 at 7.

⁴⁰ *See Miller v. Pocono Ranch Lands Prop. Owners Ass'n Inc.*, 557 F. App'x 141, 145 (3d Cir. 2014); *Walter v. Palisades Collection, LLC*, 480 F. Supp. 2d 797, 801 (E.D. Pa. 2007) (reasoning alleged injuries of unpaid contested debt and withdrawn lawsuits are not specific injuries giving rise to RICO liability).

⁴¹ *See Clark v. Conahan*, 737 F. Supp. 2d 239, 255 (M.D. Pa. 2010) (observing "[m]ental distress, emotional distress, and harmed reputations do not constitute injury to business or property sufficient to confer standing on a RICO plaintiff" and explaining "injury for RICO purposes requires proof of concrete financial loss, not mere injury to an intangible property interest").

⁴² *Parness v. Essex Cty. Corr. Facility*, No. 15-2397, 2016 WL 1643773, at *4 (D.N.J. Apr. 25, 2016) (citing *Magnum v. Archdiocese of Philadelphia*, 253 F. App'x 224, 227 (3d Cir. 2007)).

⁴³ *Id.*

⁴⁴ *See Magnum*, 253 F. App'x at 229 ("A plaintiff alleging a civil RICO violation under *either* § 1962(c) or (d) must plead a cognizable injury to 'business or property' under § 1964(c).").

⁴⁵ *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008).

⁴⁶ *Marmon Coal Co. v. Dir., Office Workers' Compensation Programs*, 726 F.3d 387, 394 (3d Cir. 2013) (internal quotation marks omitted).

⁴⁷ *Egli v. Strimel*, 251 F. Supp. 3d 827, 835 (E.D. Pa. 2017) (internal quotations omitted).

⁴⁸ *Shah v. United States*, 540 F. App'x 91, 93 (3d Cir. 2013) (per curiam).

⁴⁹ ECF Doc. No. 2 at 49.

⁵⁰ *See Cent. Bank of Dover, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone[.]").

[51] *See* ECF Doc. No. 2 at 50.

[52] *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).

[53] *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).

[54] ECF Doc. No. 2 at 3.

[55] *Id.* at 4-5.

[56] *See Lincoln Ben. Life Co.*, 800 F.3d at 105 (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) ("The burden of establishing federal jurisdiction rests with the party asserting its existence.")).